UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

K.L., individually and on behalf of M.L., a child
with a disability,

*Plaintiffs,*

-against-

Case No. 12 Civ. 6313

WARWICK VALLEY CENTRAL SCHOOL DISTRICT,

*Defendant.*

PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
ATTORNEYS' FEES

CUDDY LAW FIRM, P.C.
Andrew K. Cuddy, Esq., of counsel
Jason H. Sterne, of counsel
145 E. Genesee Street
Auburn, New York 13021
(716) 868-9103
acuddy@cuddylawfirm.com

TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . .   i

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . .   1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . .   1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . .   5

I.   THE IDEA . . . . . . . . . . . . . . . . . . . . . .   5

II.  THE PLAINTIFF PREVAILED AT THE ADMINISTRATIVE LEVEL . . . . . .   7

III. THE REQUESTED FEE IS REASONABLE . . . . . . . . . . . .   7

     A.   Plaintiff's Counsels' Hourly Rates Are Reasonable . . . . . . . .   8

     B.   The Hours Expended By Counsel Are Reasonable . . . . . . . . . .   9

IV.  THE COURT SHOULD AWARD ALL THE REQUESTED FEES . . . . . . .   10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . .   14

PRELIMINARY STATEMENT

This is an action for attorneys' fees and related costs pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.,* brought by the parent of a child with a disability. The plaintiff requests that the Court grant attorneys' fees and related costs due to the plaintiff's prevailing party status.

STATEMENT OF FACTS

The facts of the underlying administrative hearing are set forth in the declaration of Andrew K. Cuddy, who was lead counsel in the underlying matter, and are summarized here. Plaintiff K.L. is the parent of M.L., a minor. M.L. is classified as a student with autism by defendant Warwick Valley Central School District pursuant to the provisions of the Individuals with Disabilities Education Act (IDEA). M.L. has been diagnosed with Asperger's Disorder, a disorder on the autism spectrum, as well as Attention Deficit Hyperactivity Disorder (ADHD), Oppositional Defiant Disorder (ODD), a Mood Disorder, and a possible Personality Disorder. As of the date of the impartial due process hearing request, which initiated the underlying administrative matter, M.L. was in the sixth grade.

On May 18, 2012 the parents completed the intake process and engaged the predecessor firm to the Cuddy Law Firm, P.C. (the Law Office of Andrew K. Cuddy) for consultation. On May 31, 2012, the parents retained the firm to initiate a due process hearing on behalf of their child, M.L. (Cuddy Ex. A). The retainer agreement included an adjusted payment schedule and reliance on the fee-shifting provision of the IDEA.

By letter dated June 15, 2012, Mr. Cuddy initiated an impartial due process hearing against defendant Warwick Valley Central School District. (Cuddy Ex. B). The hearing request alleged a denial of a free appropriate public education on various procedural and substantive grounds.

Specifically, the request alleged a failure to provide the parents with timely notice of the defendant's committee on special education's (CSE) recommendation prior to the start of the extended school year (which began in early July 2012), as defendant had informed the parents that a final

1

notice of recommendation (FNR) would not issue until late August or early September.  The request also alleged a failure to comprehensively evaluate the student, particularly with respect to possible central auditory processing problems and the need for a functional behavioral assessment, alleged a failure to continue extended school year (ESY) services for the summer of 2012, and alleged a failure to recommend an appropriate placement, and failure to provide appropriate goals in the student's individualized education program (IEP).

As relief, the parent proposed placement (or prospective payment for) M.L.'s attendance at the Bishop Dunn Memorial School for the summer of 2012. Bishop Dunn Memorial School is a small private school located on the campus of Mount Saint Mary's College in Newburgh, New York. The school has students in grades pre-kindergarten through eighth grade.

On June 19, 2012, the school district's attorney acknowledged the obligation of the defendant to provide extended school year services to the student during the summer of 2012, as pendency or "stay-put services." Shortly after submitting the hearing request, the parents were informed by Bishop Dunn's administration that the school had begun to phase out services for students with special needs, and, as a result, would not be admitting any new students into the special education program in fall 2012.  As such, the parents shifted their focus from Bishop Dunn to the Sacred Heart Parish School in Monroe, New York.

On June 19, 2012, Mr. Cuddy communicated to the attorneys for the school district a proposal for settlement that included placement at Sacred Heart for the 2012/13 regular school year:

> The parent receive the resolution session notice today, and it is scheduled for Tuesday.
>
> We are primarily concerned about pendency, and would like that resolved.
>
> For settlement, I think the structure is simple;
>
> 1) ESY at Bishop Dunn
>
> 2) Regular school year at Sacred Heart, tuition is $3Kish
>
> 3) Transport, this was an issue if Bishop Dunn was the regular school year site, not an issue with Sacred Heart as it is within the transport radius.
>
> 4) IESP by Monroe-Woodbury
>
> 5) Fees and costs, rather minor at this point and under $5K, and I think this could be wrapped up tomorrow.
>
> Would you like me to draft something and make a proposal.

2

Yes, [Michael J. Cuddy, Jr., Esq.] will likely be handling this. I was just following up based on a client call tonight, and having time on my hands stuck in a hotel.

AC

The "IESP" referenced in the offer is an "individualized education services program," which is developed in the same manner as an IEP, but applies to students attending non-public schools who are receiving special education and/or related services from the school district in which the non-public school is located. The IESP would provide for needed services unavailable to M.L. at Sacred Heart.

On June 18, 2012, the parents received notice that the regulatorily mandated resolution session was scheduled for June 26, 2012. On June 21, 2012, Mr. Cuddy's office forwarded a written settlement proposal to the attorney for the school district, which included a provision for the student to attend the Sacred Heart Parish School, as it had been determined that the program at Bishop Dunn originally identified by the parent and proposed in the hearing request was no longer available. Settlement negotiations continued until July 18, 2012, at which time a settlement was reached, submitted to the hearing officer to "so order," and the administrative proceeding was concluded with said order on July 20, 2012. The full text of the Agreement and Order (redacted to protect the identity of the student) follows:

### Agreement and Order

The Warwick Valley Central School District ("District") and [K. and B.L.] ("Parents") on behalf of their son [M.L.] ("Student"), enter into this Agreement in response to requests made by the Parents to resolve their Complaint filed with the District on June 14, 2012. A copy of the Complaint is attached.

The Parents are represented by Andrew K. Cuddy, of the Law Office of Andrew K. Cuddy, 145 East Genesee Street, Auburn, New York, 13021. The District is represented by Karen S. Norlander, of Girvin & Ferlazzo, P.C., 20 Corporate Woods Boulevard, Albany, New York 12211. Each party has had the opportunity to consult with legal counsel prior to executing this agreement.

Whereas, the District has arranged to provide for round trip transportation and extended school year services at Bishop Dunn Memorial School, ("Bishop Dunn") 50 Gidney Avenue, Newburgh, New York, 12550, from June 25, 2012 through August 3, 2012, in accordance with its obligations under the pendency provision of the law as set forth in 8 N.Y.C.R.R. 200.5 (m), and shall continue to do so notwithstanding the resolution of the due process complaint with this agreement and order.

3

WHEREAS, the District will transport the Student between his home and Sacred Heart Parish School ("Sacred Heart") during the 2012–2013 school year in accordance with its obligations under Education Law §3635, despite the fact that the Parents did not make their request by April 1, as otherwise required by law, insofar as the District has determined to waive the April 1 deadline based on the fact that it is transporting other resident students there and will not incur any additional expense to transport this Student.

WHEREAS, in accordance with law, the District shall forward to the District of Location of Sacred Heart, ("Monroe-Woodbury School District") a copy of the Student's 2012–2013 IEP and any other records or evaluations requested. This agreement and order is to be considered the Parents' consent for the Student's educational records to be released by the District to the Monroe-Woodbury School District.

WHEREAS, the District represents that, upon its receipt of documentation from the Monroe-Woodbury School District of its provision of special education services to this Student provided in accordance with an Individualized Education Service Plan ("IESP"), the District shall reimburse the Monroe-Woodbury School District in accordance with its prior practice and commitment to do so.

WHEREAS, the parties further acknowledge that in seeking to resolve their Complaint and working in good faith to do so, the Parents requested that the Board reimburse them $6500 in attorneys' fees which the Board of Education declined to authorize.

WHEREAS, the District, having convened a Resolution Meeting, in accordance with law, and having met with the Parent on July 12, 2012, agreed to resolve the Parents' Complaint referred to above:

WHEREFORE, the parties aqree as follows:

1) The District shall undertake each of the actions specified under the "WHEREAS" clauses set forth above.

2) Nothing in this resolution shall preclude the Parents from seeking an Order from a court of competent jurisdiction for any attorneys' fees for which they may be entitled as a matter of law.

3) For purposes of attorneys' fees, the District will not object to the Parents' request that this agreement be ordered by the hearing officer to obviate the need for further proceedings to settle the Parents' Complaint.

4) Upon the representations and commitments made by the District above to provide transportation, and to forward to the Monroe-Woodbury School District the Student's IEP and any other documents the Parents'[sic] request, upon receipt of their written consent, and to otherwise cooperate with the Monroe-Woodbury School District to pay for special education services arranged pursuant to an IESP, the Parents acknowledge that the bearing request is resolved by this agreement and order, with prejudice.

5) The Parents acknowledge that with the District's continued implementation of the terms set forth herein, this agreement resolves all outstanding issues raised in the Parents' Complaint attached hereto, except for the issue of attorney fees and costs.

6) The District representative named below is authorized by the Board of Education to enter into this agreement on its behalf.

7) Fax and electronic signatures will be treated as originals.

This agreement is fully enforceable in a state or federal court of competent jurisdiction in accordance with law. (See 8 NYCRR 200.5(j)(2)(iv)).

Cuddy Ex. C. This agreement and order resolved the underlying matter.

On August 17, 2012, plaintiff K.L. initiated this action, seeking attorneys' fees and related costs for the underlying administrative matter. Docket No. 1. Defendant answered on October 16, 2012, and on December 21, 2012, the case was reassigned to the Honorable Denise L. Cote. Docket Nos. 2, 3. An initial conference was held by telephone on January 18, 2013, and a pretrial scheduling order was issued by the Court that day, which stated that "Any motion to dismiss by defendant: Motion served by February 15, 2013. Opposition served by March 8, 2013. Reply served by March 22, 2013." Docket Nos. 4, 6. Defendant filed no such motion, and on February 20, 2013 the Court endorsed a letter from plaintiff's counsel, writing on the letter "ENDORSEMENT: Granted. The defendant has waived its right to file the motion to dismiss. The Plaintiff's motion for summary judgment is due March 1; opposition is due March 15; the reply is due March 22."

Plaintiff now moves for summary judgment.

ARGUMENT

I.   THE IDEA

The Individuals with Disabilities Education Act (IDEA) is part of "an ambitious federal effort to promote the education of handicapped children." *Walczak v. Fla. Union Free Sch. Dist.,* 142 F.3d 119, 122 (2nd Cir. 1998) quoting *Board of Educ. v. Rowley,* 458 U.S. 176, 179 (1982). Under the IDEA, Congress "offers federal funds to states that demonstrate, inter alia, that they have developed plans to assure all children with disabilities residing in the state a free appropriate public education." *Mackey v. Board of Educ.,* 386 F.3d 158, 159-60 (2nd Cir. 2004) (quoting 20 U.S.C. § 1412(a)(1)(A)). The statute "expresses a strong preference" for disabled children "to be educated,

to the maximum extent appropriate, together with their non-disabled peers" and, accordingly, requires special education and related services "[to] be provided in the least restrictive setting consistent with a child's needs." *Walczak, supra,* 142 F.3d at 122.

The IDEA's education delivery system begins with the "individualized education program," or IEP. *Murphy v. Arlington Cent. Sch. Dist. Board of Educ.,* 297 F.3d 195, 197 (2nd Cir. 2002); *Honig v. Doe,* 484 U.S. 305, 311 (1988); see 20 U.S.C. § 1414(d). The IEP, which results from a collaboration between parents, educators, and district representatives, describes the child's present educational performance, establishes annual goals and short-term objectives for improvements in that performance, and dictates the specially designed instruction and services to enable the child to meet those objectives. *Murphy, supra; Honig, supra.*

IDEA provides a variety of procedural safeguards regarding the provision of free appropriate public education by school districts. *Mackey, supra,* 386 F.3d at 160; see also *Walczak, supra,* 142 F.3d at 122–23 (describing procedural safeguards). Although "the responsibility for determining whether a challenged IEP will provide a child with an appropriate public education rests in the first instance with administrative hearing and review officers," their rulings are subject to independent judicial review. *Walczak, supra,* 142 F.3d at 129; See 20 U.S.C. § 1415(i)(2)(A) (right to civil action in review).

Finally, the IDEA includes a fee-shifting provision, which allows prevailing parents to recover attorneys' fees from school districts. See, e.g., *Schaffer v. Weast,* 546 U.S. 49, 126 S.Ct 528 (2005) ("Prevailing parents may also recover attorney's fees."); 20 U.S.C. § 1415(i)(3)(B). This action was brought by the prevailing parents to recover attorneys' fees and costs accumulated during the prosecution of this matter in the state administrative proceedings and the state courts.

A party "prevails" for purposes of federal fee-shifting statutes when he obtains "actual relief on the merits" of a claim that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby,* 506 U.S. 103, 111–112 (1992). The prevailing party inquiry "does not turn on the magnitude of relief obtained," but the *size* of the fee award does. *Farrar,* 506 U.S. at 114. The Supreme Court has said that "the most critical factor" in determining the reasonableness of a fee award "is the degree of

6

success obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983). Therefore, "the degree of the plaintiff's success in relation to the other goals of the lawsuit is a factor critical to the determination of the *size* of a reasonable fee, not to *eligibility* for a fee award at all." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790 (1989) (emphasis added). And "[e]ven if the results obtained do not justify awarding fees for all the hours spent on a particular case, no fee is reasonable unless it would be adequate to induce other attorneys to represent similarly situated clients seeking relief comparable to that obtained in the case at hand." *Hensley, supra,* at 449.

## II.   THE PLAINTIFF PREVAILED AT THE ADMINISTRATIVE LEVEL

To obtain prevailing party status, a plaintiff must secure relief that alters the legal relationship between the parties and modifies the defendant's behavior in a way that directly benefits the plaintiff. See, e.g., *Farrar v. Hobby,* 506 U.S. 103 (1992). Unquestionably, the plaintiffs prevailed in the administrative proceedings. They obtained a consent decree (or "agreement and order") signed and "so-ordered" by the impartial hearing officer. See A. Cuddy Ex. C; compare *A.R. v. NYCDOE,* 407 F.3d 65, 197 Ed. Law Rep. 525 (2nd Cir. 2005) (a consent decree in an IDEA case is "evidence the same combination of administrative imprimatur, change in the legal relationship of the parties, and judicial enforceability that renders the winner on the merits in an IHO decision"). This order included tangible relief, including summer educational services, and transportation services to a private school for the school year.

## III.   THE REQUESTED FEE IS REASONABLE

Courts have traditionally presumed that a fee calculated via the "lodestar method," namely multiplying the number of hours expended by a reasonable hourly rate, is a reasonable fee. *Hensley v. Eckerhart,* 461 U.S. 424 (1983); *Marisol A. ex rel. Forbes v. Giuliani,* 111 F.Supp.2d 381 (S.D.N.Y. 2000). There is a strong presumption that the lodestar amount is reasonable. See, e.g., *Harris v. Marhoefer,* 24 F.3d 16, 18 (9th Cir. 1994); and see *Cabrales v. County of Los Angeles,* 864 F.2d 1454, 1464 (9th Cir. 1988) ("Only in rare instances should the lodestar figure be adjusted on the basis of other considerations"). The Second Circuit has adopted the term "presumptively reason-

7

able fee" as an effective synonym for "lodestar," and now seems to use the terms interchangeably. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 522 F.3d 182, 183 (2nd Cir. 2008); *Millea v. Metro-North R. Co.,* 658 F.3d 154, 166 (2nd Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.' "). Plaintiff seeks recovery on that basis.

A.   *Plaintiff's Counsels' Hourly Rates Are Reasonable*

In determining whether a requested hourly rate is reasonable, courts look to the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Gierlinger v. Gleason,* 160 F.3d 858 (2nd Cir. 1998); *A.R. v. N.Y.C. Dept. of Ed.,* 407 F.3d 65 (2nd Cir. 2005). The Second Circuit has directed that district courts employ "current rather than historic hourly rates" in calculating the lodestar amount. *Farbotko v. Clinton County of New York,* 433 F.3d 204 (2nd Cir. 2005). Furthermore, the Second Circuit has emphasized that hourly rates are not determined by judicial precedent but by a survey of affidavits demonstrating community rate. *Id.* Of course, the most important legal skills are transferable, so an attorney's overall experience, rather than only his experience in education law, should be taken into account. *A.R., supra.*

Plaintiff has included sworn statements from other attorneys in the field of special education law attesting to the community rate for representation of parents in the Southern District of New York. Gary S. Mayerson, a 1979 law school graduate, states that his hourly rate is $650, while his partner Tracey S. Walsh, who graduated from law school in 1994, bills at $500 per hour. See Affidavit of Gary S. Mayerson. Jesse C. Cutler, who graduated from law school in 2002, states that his hourly rate for parent representation is $450. See Affirmation of Jesse C. Cutler. Adrienne Arkontaky, who was admitted to practice in 2005, bills her clients $450 per hour for special education representation. See Declaration of Adrienne Arkontaky. In addition, she notes that her office bills several other attorneys, including Michael and Andrew Cuddy, and Jason H. Sterne, at $475 per hour.

Andrew K. Cuddy, Esq., counsel in this matter, is a 1996 graduate of SUNY/Buffalo law school with extensive experience in special education litigation.  Mr. Cuddy has 59 reported decisions at the Office of State Review; his affidavit establishes that he has conducted hearings in about seventy-five different school districts.  See Declaration of Andrew K. Cuddy.  Federal counsel Jason H. Sterne is also a 1996 SUNY/Buffalo graduate, has numerous reported appellate decisions and district court decisions and has briefed approximately seventy due process hearings, as well as conducting numerous multi-day hearings, in the more than seven years since he joined Mr. Cuddy's practice as of counsel, in fall 2005.  Furthermore, he has briefed about 40 State Review Officer appeals on behalf of parents. See Sterne Declaration. Michael J. Cuddy is a 1983 graduate of SUNY/Buffalo law school, with nineteen years experience as a school district administrator and four years litigation experience with the Cuddy Law Firm.  Declaration of Michael Cuddy.  He served as co-counsel in the underlying administrative matter.  *Id.* Michael Cuddy has extensive experience as a school district labor negotiator, as a school district hearing officer, and has been appointed a school district attorney for the Orleans-Niagara BOCES and for the Lewiston-Porter district.  He also represented the Ithaca City School District in matters before the New York State Division of Human Rights and the New York State Department of Labor while employed as an administrator by the District from 1996 through 2006.  See M. Cuddy Decl., ¶ 4–6.  All this experience is related to his legal training, and all is transferrable to representing parents in special education hearings; as such, he should be awarded an hourly fee in line with his *overall* experience since his graduation from law school, namely, $475 per hour.

B.    *The Hours Expended By Counsel Are Reasonable*

The reasonableness of hours spent is a fact-specific determination, made on a case-by-case basis. *Hensley, supra,* at 429. The Supreme Court has established guidelines to aid in determining reasonableness, including: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount in-

volved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and, (12) awards in similar cases. *Id.,* at 430, n. 3. A district court should avoid countenancing criticisms of fee claims that amount to "nit-picking." *Goldring v. District of Columbia,* 2005 WL 3294005 (D.D.C. 2005).

Andrew K. Cuddy was lead counsel in the underlying administrative matter.  He billed 21.5 hours to initiate the matter, and to negotiate and settle the matter via the agreement and order. This included a review of educational records and conference call with the parents, (Cuddy Ex. D at 1), drafting the hearing request (*Id.* at 2), supervising the paralegal who participated in the resolution session (*Id.* at 5), and extensive negotiations via email and telephone (Cuddy Ex. D at 5–6). Michael Cuddy assisted Andrew Cuddy and billed 4.9 hours, mostly expended in negotiating and revising the settlement (Cuddy Ex. D at 6–7). The paralegals billed 5.9 hours in assisting the attorneys (Cuddy Ex. D at 7–8). This grand total of 32.3 hours to initiate, negotiate, and resolve a special education matter should be deemed eminently reasonable.

Jason H. Sterne is lead counsel at the federal level. He has billed 16.4 hours to initiate this case, to discuss settlement with opposing counsel, to participate in the Court's scheduling conference, and to research and draft these motion papers. Andrew K. Cuddy billed 6.1 hours to assist, which included procuring supporting sworn statements from other attorneys with regard to rate, and reviewing and suggesting changes to the papers. See Cuddy Ex. E at 1–4. The paralegals billed less than one hour providing support. Cuddy Ex. E at 4. Here, less than 24 staff hours were expended to take a federal case from initiation to dispositive motions, which should also be deemed completely reasonable.

## IV.  THE COURT SHOULD AWARD ALL THE REQUESTED FEES

"A prevailing party who is entitled to a fee award for his successful prosecution of successful claims is not entitled to a fee award for unsuccessful claims that were based on different facts and different legal theories." *Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 173 (2nd Cir. 1998) (quoting *Hensley v. Eckerhart,* 461 U.S. at 434, internal quotation marks omitted). On the other hand, when

a plaintiff's claims for relief involve common facts and legal issues, a court should not "divide the number of hours expended on a claim-by-claim basis." *Starkey v. Somers Cent. Sch. Dist.,* 2008 WL 5378123, at *2 (S.D.N.Y. 2008) (quoting Hensley, 461 U.S. at 435, internal quotation marks omitted). Thus, a court should not reduce fee requests due to unsuccessful claims if the successful and unsuccessful claims are "inextricably intertwined and involve a common core of facts or are based upon related legal theories." *Quaratino v. Tiffany & Co.,* 166 F.3d 422, 425 (2nd Cir. 1999) (citations and internal quotation marks omitted); see generally *E.S. v. Katonah-Lewisboro School Dist.,* 796 F.Supp.2d 421, 427–428 (S.D.N.Y. 2011).

In *E.S.,* a school district argued "that the Court should reduce Plaintiffs' award of attorneys' fees by fifty percent because Plaintiffs succeeded in obtaining tuition reimbursement for only one of the two challenged academic years. … This argument fails because Plaintiffs' successful and unsuccessful claims were inextricably intertwined and involved common legal and factual questions." *Id.*, at 428. In that case, the "claim for tuition reimbursement for the 2006–2007 academic year involved the same legal issues as the claim for reimbursement for the 2007–2008 academic year. Both issues required analysis of whether B.S.'s class grouping was appropriate and whether Defendant complied with the IDEA's requirements during the years in question. Additionally, Plaintiffs' claims involved common facts. For example, one of the key issues in the determination that B.S.'s education program in 2007–2008 was inappropriate rested on the progress that B.S. made during the 2006–2007 academic year. Moreover, B.S.'s entire educational history played a role in Plaintiffs' tuition reimbursement claims for 2006–2007 and 2007–2008. Therefore, Plaintiffs' request for fees will not be reduced on the grounds that Plaintiffs were only a partially prevailing party." *Id.*

In *Millea v. MetroNorth R. Co.,* 658 F.3d 154, 94 Empl. Prac. Dec. P 44,288, 17 Wage & Hour Cas.2d (BNA) 1825, 43 NDLR P 175 (2nd Cir. 2011), the Second Circuit clarified the importance of the "lodestar" as the "presumptively reasonable fee" and provided guidance on the impermissibility of various reductions to that fee. *Millea* involved a claim under the Family and Medical Leave Act (FMLA), upon which the plaintiff won a partial victory before a jury. The FMLA contains an attorneys' fee provision that is similar (but not entirely identical) to IDEA's, namely that

11

the district court "shall, in addition to any judgment awarded to the plaintiff, allow a reasonable attorney's fee, reasonable expert witness fees, and other costs of the action to be paid by the defendant." 29 U.S.C. § 2617(a)(3).  While noting that the district court retains discretion to determine what constitutes a reasonable fee, the Court cautioned that "this discretion is not unfettered, and when a prevailing party is entitled to attorneys' fees, the district court must abide by the procedural requirements for calculating those fees articulated by this Court and the Supreme Court." 658 F.3d at 166.  Importantly, the Circuit reminded district courts that "[t]he whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery." 658 F.3d at 169.

In *Millea,* "the district court impermissibly reduced its initial fee award based on an incorrect conclusion that Millea's victory was 'de minimis[]' " because "[t]he district court conflated a small damages award with a de minimis victory." 658 F.3d at 168.  The Circuit noted that a de minimis victory would entail "a derisory or contemptuous rejection by the jury" or "a [victory based upon a] technicality in a mostly frivolous lawsuit[.]" *Id.* The Circuit explained that "FMLA claims are often small-ticket items, and small damages awards should be expected without raising the inference that the victory was technical or de minimis. If an expense of time is required to obtain an award that is not available by voluntary compliance or offer of settlement, the expense advances the purposes of the statute. Absent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance." *Id.* Thus, "[t]he district court erred by adjusting the attorneys' fee award based on the outcome of the litigation without tying that outcome to the quality of Millea's attorneys and without making the adjustment within the lodestar calculation." *Id.* The Second Circuit's reasoning should apply equally well to IDEA actions, where the outcomes are often "small-ticket items" as in FMLA. Congress and the Second Circuit have clearly stated that disproportionality between fee and result is an invalid basis for reducing a fee award. See also *United Auto. Workers Local 259 Social Sec. Dept. v. Metro Auto Center,* 501 F.3d 283, 293 (3rd Cir. 2007) ("Thus, we have rejected a rule of proportionality in civil rights cases.  [citation omitted] ('[A] court may not diminish counsel fees in a section 1983 action to maintain some ratio between the fees and the damages

12

awarded.'). And, when asked to limit our rejection of proportionality to 42 U.S.C. § 1988 fee awards, we refused.").

Here, the parents obtained "round trip transportation and extended school year services at Bishop Dunn Memorial School"; transportation "between [the Student's] home and Sacred Heart Parish School ("Sacred Heart") during the 2012–2013 school year"; and, "reimburse[ment to] the Monroe-Woodbury School District" for the IESP. Cuddy Decl., Ex. C. This compares well to the hearing request, which requested very similar relief. See Cuddy Decl., Ex. B. While the parents elected to abandon their request for the tuition for the 2012/13 school year, the cost of the tuition at Sacred Heart was nominal compared to the cost of transportation. Cuddy Decl., ¶ 43.

The total fee request is as follows:

| Attorney | Type of Work | Hours |
|---|---|---|
| Michael Cuddy | Administrative | 4.9 |
| Andrew Cuddy | Administrative | 21.5 |
| | Federal | 6.1 |
| Jason Sterne | Federal | 16.4 |
| Diane Aughtmon | Paralegal | 5.2 |
| Shobna Cuddy | Paralegal | 1.6 |
| Costs | Administrative | $4.00 |
| | Federal | $350.00 |

Thus, the plaintiff requests $13,281.50 for the administrative fees and costs, and $10,627.50 for the federal fees and costs.

13

## CONCLUSION

Based on the foregoing, the Court should grant attorneys' fees and related costs, and grant such further relief as the Court deems just and proper.

Dated: Auburn, New York
      March 1, 2013

                Respectfully submitted,

                /s/ Jason H. Sterne
                _____
                CUDDY LAW FIRM, P.C.
                Andrew K. Cuddy, Esq., of counsel
                Jason H. Sterne, of counsel
                *Attorneys for Plaintiff*
                145 E. Genesee Street
                Auburn, New York 13021
                (716) 868-9103
                acuddy@cuddylawfirm.com

14