UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
K.L., individually and as parent and   :
next friend of M.L., a child with a    :
disability,                            :       12 Civ. 6313 (DLC)
                                       :
                    Plaintiff,         :       OPINION & ORDER
                                       :
        -v-                            :
                                       :
WARWICK VALLEY CENTRAL SCHOOL DISTRICT, :
                                       :
                    Defendant.         :
                                       :
-------------------------------------- X

Appearances:

For plaintiff:

Andrew K. Cuddy, Esq.
Jason H. Sterne
Cuddy Law Firm, P.C.
145 E. Genesee Street
Auburn, NY 13021

For defendant:

Karen S. Norlander
Girvin & Ferlazzo, P.C.
20 Corporate Woods Boulevard
Albany, NY 12211


DENISE COTE, District Judge:

    Plaintiff brings this action pursuant to the fee-shifting

provisions of the Individuals with Disabilities Education Act,

20 U.S.C. §§ 1400 et seq. ("IDEA"), and moves for summary

judgment seeking attorneys' fees in the amount of $27,614.00.

1

Defendant Warwick Valley Central School District (the "District")[1] opposes the fee application on the grounds that (i) plaintiff is not a "prevailing party" under the IDEA, and (ii) the hourly rate sought and number of hours expended by plaintiff's attorneys are unreasonable.  For the following reasons, plaintiff's motion for fees is granted in part. Plaintiff is awarded attorneys' fees and costs in the amount of $3,394.00.

BACKGROUND

Plaintiff K.L. (the "Parent") is the parent of M.L. (the "Student"), a child with a disability.  The District provided M.L. with an individualized education program ("IEP") for the 2011-2012 school year, which included extended school year services ("ESY") at Bishop Dunn Memorial School ("Bishop") during the summer of 2011.  The Parent had unilaterally enrolled the Student at the St. Stephen's School for the 2011-2012 school year.

On March 27, 2012, the District convened a local Committee on Special Education ("CSE") to develop an IEP for the Student for the 2012-2013 school year ("2012-2013 IEP").  The Parent

_____

[1] The Warwick Valley Central School District is located in Orange County, New York.

attended and participated in the CSE.  The District's 2012-2013 IEP recommended that M.L. be placed at the Warwick Valley Middle School for the 2012-2013 school year, and that the Student receive "Resource Room" services daily, speech and language classes two periods per week, and counseling one period per week throughout the 2012-2013 school year.  The 2012-2013 IEP discontinued both ESY services for the summer of 2012 and occupational therapy services throughout the school year.  The CSE indicated that it did not recommend ESY services because it had "concluded . . . that the [S]tudent would not substantially regress over the summer."

The Parent objected to various aspects of the proposed 2012-2013 IEP, particularly the Student's exclusion from ESY for the summer of 2012.  Although the Parent requested a written copy of the IEP on two occasions -- first at the end of the CSE meeting, and then in writing in early May 2012 -- the plaintiff had not received a written copy of the 2012-2013 IEP as of the beginning of June 2012.  2012 ESY services were scheduled to begin in late June 2012.

The plaintiff contacted the Cuddy Law Firm (the "Firm") seeking assistance in obtaining a more suitable school placement for the Student for the 2012-2013 school year.  The Firm specializes in providing "special education and special needs

3

planning" legal services.  It has ten attorneys working out of two offices: its main offices in Auburn, New York, and a second office in White Plains, New York.

After consultation, the plaintiff signed a retainer agreement with the Firm on May 31, 2012 ("Retainer").  The Retainer relied on the fee-shifting provision of the IDEA.  The Retainer provided that the Parent would pay (i) $2,000 as an initial retainer, (ii) $1,000 five business days before each scheduled hearing date, and (iii) all costs and expenses;[2] and that the Firm would bill the Parent "$475 per hour for attorney time, and $125 per hour for paralegal time."  The Retainer also required the Parent to include an express provision in any settlement agreement that attorneys' fees would be paid by the District, and to cooperate fully in any efforts to recover attorneys' fees and costs from the District.

The Firm initiated administrative proceedings against the District by letter dated June 15, 2012, requesting an impartial due process hearing (the "Hearing Request").  The Hearing Request alleged that the District had violated the IDEA by

---

[2] All fees paid by the Parent or by the District are "treated as advance payments of legal fees or payment of fees due, whichever is appropriate," and "should excess fees be received from the [Parent] and/or [D]istrict, excess fees will be refunded to the [Parent] within thirty (30) days of the closing of the file by the Firm."

4

denying M.L. a free appropriate public education ("FAPE") for the 2012-2013 school year on various procedural and substantive grounds, including inter alia that the District improperly discontinued the Student's ESY for the summer of 2012 over the Parent's objection; failed to provide the Parent with timely notice of the District's proposed IEP prior to the start of ESY, denying the Student a FAPE;[3] failed to evaluate the Student properly; failed to include appropriate goals in the 2012-2013 IEP; and failed to provide an appropriate placement to accommodate the Student's needs.  According to the Firm, however, "[t]he major purpose of the [H]earing [R]equest was to obtain summer 2012 [ESY] services for the Student."

For relief, the plaintiff sought either placement at or prospective payment for M.L. to attend Bishop for ESY during the summer of 2012 and the following 2012-2013 school year, or, in the alternative, M.L.'s placement in appropriate programs for those periods with all related costs paid by the District.  The Plaintiff also requested: (i) transportation and all costs

_____

[3] The plaintiff had not received either the IEP or written notice of the CSE recommendation at the time the Hearing Request was filed.  In the Hearing Request, the plaintiff asserts that the District indicated that the IEP and notice or recommendation would not be sent to the Parent until late August or early September, and that this delay significantly impeded the Parent's ability to participate in the decision-making process regarding M.L.'s FAPE.

related to the Student's attendance at Bishop, (ii) assurance
that the school district in which Bishop was located would
develop and implement an Individual Educational Service Plan
("IESP") for the Student during the 2012-2013 school year, which
would provide any additional special education services that the
Student required, (iii) the provision of "any services that were
not appropriately provided pursuant to the pendency provision of
the IDEA" during the course of the administrative proceedings,
and (iv) orders to conduct both a functional behavior assessment
and an auditory process evaluation of the Student.  The Hearing
Request was four pages in length.

     The District received a copy of the Hearing Request on June
15.  The District promptly acknowledged its obligation under the
IDEA's "stay-put" provision to maintain ESY for M.L. at Bishop
during the pendency of the administrative proceedings.[4]

     Shortly after submitting the Hearing Request, the plaintiff
was informed that Bishop would not admit any new students into
its special education program for fall 2012.  As a result, the
Parent sought alternative placement for M.L. for the 2012-2013

---

[4] The pendency or "stay put" provision of the IDEA requires a
school district to maintain the "then current educational
placements" of a student only "during the pendency of any
proceedings relating to the identification, evaluation or
placement of the student."  20 U.S.C. § 1415(j); N.Y. Educ. Law.
§ 4404(4).  Any pendency obligations thus expire with the
resolution of those proceedings.

school year at Sacred Heart Parish School ("Sacred Heart"),
located in the Monroe-Woodbury School District ("Monroe-
Woodbury").  Whereas Bishop is located approximately thirty-
seven miles from M.L.'s home, Sacred Heart is a non-public
school located within fifteen miles of M.L.'s home.

On June 19, the Firm communicated plaintiff's proposed
settlement terms to the District ("June 19 Proposal").  This was
the second document produced by the Firm, and appears to have
been a short message from attorney Andrew Cuddy ("A. Cuddy")
that was no longer than one page in length.  The June 19
Proposal stated:

> The parent receive [sic] the resolution session notice
> today, and it is scheduled for Tuesday.
>
> We are primarily concerned about pendency,[5] and would like
> that resolved.
>
> For settlement, I think the structure is simple;
>
> 1) ESY at Bishop []
>
> 2) Regular school year at Sacred Heart, tuition is $3Kish
>
> 3) Transport, this was an issue if Bishop [] was the
> regular school year site, not an issue with Sacred Heart as
> it is within the transport radius.[6]

---

[5] The reference to pendency appears to be a reference to
supporting the Student's participation in the ESY program at
Bishop during the summer of 2012.

[6] The Firm here is referring to the fact that Sacred Heart is
located within fifteen miles of M.L.'s home, and that the
District is required to provide M.L. and other resident students
transportation to a school within a fifteen-mile radius of their
homes if the District receives a written request by April 1.
See N.Y. Educ. Law § 3635.

4) IESP by Monroe-Woodbury.

5) Fees and costs, rather minor at this point and under $5K, and I think this could be wrapped up tomorrow.

Would you like me to draft something and make a proposal.

Yes, [Michael J. Cuddy] will likely be handling this.  I was just following up based on a client call tonight, and having time on my hands stuck in a hotel.

AC

On June 21, the Firm sent a written settlement agreement to the attorney for the District reflecting the terms outlined in the June 19 Proposal.[7]  The parties participated in an IDEA-mandated resolution meeting on July 12 ("Resolution Session"), which lasted thirty minutes.  The plaintiff; Dr. Raymond Bryant, Superintendant of Schools for the District; and Chris Fox, the District's Director of Pupil Personnel, attended the Resolution Session in person.  A paralegal from the Firm, Diane Aughtmon ("Aughtmon"), participated in the Resolution Session by telephone.

At the Resolution Session, the District presented its own written settlement proposal to the plaintiff ("District Proposal").  The terms of the District Proposal would be adopted

---

[7] Neither party included a copy of plaintiff's June 21 settlement proposal in their submissions to the Court.  The Firm's time records, however, indicate that attorney Michael Cuddy ("M. Cuddy") spent roughly twenty minutes on June 21, 2012 to "review and revise [the] draft settlement agreement."  No other entries in the Firm's time records reveal any additional time spent by attorneys or paralegals on preparing June 21 settlement document.

in substance in the final settlement agreement executed by the
parties soon thereafter.

The District Proposal included in relevant part: (i) a term
affirming that it would provide transportation to and ESY
services for M.L. at Bishop from June 25 through August 3, 2012,
"in accordance with its obligations under the pendency provision
of the [IDEA] . . . and shall continue to do so notwithstanding
the Parents [sic] withdrawal of their [Hearing Request],
pursuant to the terms of this agreement," and (ii) a term
agreeing to transport M.L. to Sacred Heart for the 2012-2013
school year "despite the fact that the parents did not make
their requests by April 1, as otherwise required by law."  Once
the District had guaranteed that it would provide transportation
for M.L. to Sacred Heart for the 2012-2013 school year, the
plaintiff dropped its claim for tuition at Sacred Heart in the
interest of settlement, since the cost of tuition was "nominal"
compared to the cost of transportation.

On July 18, the parties signed a settlement agreement (the
"Agreement"), which was so ordered on July 20 by impartial
hearing officer ("IHO") Kenneth Peters.  The Agreement <u>inter
alia</u> resolved that the District would forward M.L.'s relevant
records to Monroe-Woodbury, as well as

arrang[e] to provide for round trip transportation [to] and

> extended school year services at Bishop . . . from June 25,
> 2012 through August 3, 2012, in accordance with its
> obligations under the pendency provision of the [IDEA] . .
> . and shall continue to do so notwithstanding the
> resolution of the due process complaint with this agreement
> and order. . . [,]

> transport the Student between his home and Sacred Heart . .
> . during the 2012-2013 school year in accordance with its
> obligations under Education Law §3635, despite the fact
> that the [plaintiff] did not make their request by April 1,
> as otherwise required by law, insofar as the District has
> determined to waive the April 1 deadline based on the fact
> that it is transporting other resident students there and
> will not incur any additional expense to transport this
> student . . . [and]

> reimburse . . . Monroe-Woodbury [for IESP services] in
> accordance with its prior practice and commitment to do so.

The issue of fee payment remained unresolved at the time
the parties executed the Agreement.  The Agreement acknowledges
that "the Parent[] requested that the [District] reimburse . . .
$6500 in attorneys' fees which the [District] declined to
authorize."  The Agreement also affirmed that the parties had
agreed, that "with the District's continued implementation of
the terms set forth herein, this agreement resolves all
outstanding issues raised in the Parents' [Hearing Request],
except for the issue of attorney fees and costs."

Thus, just over four weeks transpired between the Firm's
submission of the Hearing Request and the parties' execution of
the Agreement.  The Parent had withdrawn its request for a
placement at Bishop for the coming school year and any request

for tuition reimbursement for Sacred Heart.  And the District had agreed to permit the Student to receive ESY at Bishop during the summer of 2012, despite the District's earlier plans to discontinue those services.

Plaintiff commenced this action for attorneys' fees on August 17, 2012.  The case was reassigned to this Court on December 21, 2012.  On February 20, 2013 the Court found that the defendant had waived its right to file a motion to dismiss.  The plaintiff seeks $27,614.00 in attorneys' fees and $354.00 in costs.  The fee request asserts that 63.5 hours of work were expended by three attorneys and two paralegals in conjunction with both the administrative and federal phases of proceedings.

DISCUSSION

The IDEA grants district courts the discretion to award "reasonable attorneys' fees" and costs to a "prevailing party." 20 U.S.C. § 1415(i)(3)(B)(i).  Fees awarded under the IDEA "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  Id. § 1415(i)(3)(C).  The IDEA fee-shifting provisions are interpreted in the same manner as other civil rights fee-shifting statutes.  A.R. ex rel. R.V. v. New York City Dept. of Educ., 407 F.3d 65, 73 (2d Cir. 2005).

11

In determining whether to award attorneys' fees under a federal fee-shifting statute such as the IDEA, a court must undertake a two-pronged inquiry.  The court "must first determine whether the party seeking the award is in fact a prevailing party."  Mr. L. v. Sloan, 449 F.3d 405, 407 (2d Cir. 2006).  Then, "[i]f the party is a prevailing party, the court must . . . determine whether, under the appropriate standard, that party should be awarded attorney's fees."  Id.

A.  Prevailing Party

In order to be considered a "prevailing party" for purposes of a federal fee-shifting statute, a plaintiff must "achieve some material alteration of the legal relationship of the parties," and "that change must also be judicially sanctioned." A.R., 407 F.3d at 67 (citation omitted).  A court-ordered settlement or consent decree provides such a judicial sanction and, thus, may support an award of attorneys' fees.  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 604 (2001); A.R., 407 F.3d at 76.  In the context of the IDEA, plaintiffs who obtain the administrative analog of a consent decree -- a settlement agreement so ordered by an IHO -- are entitled to attorneys' fees as prevailing parties.  A.R., 407 F.3d at 76.

A court's prevailing party inquiry "does not turn on the

12

magnitude of the relief obtained." Farrar v. Hobby, 506 U.S. 103, 114 (1992) (citation omitted).  Although a party need not prevail on all issues to qualify for attorneys' fees, see Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 789 (1989), it must succeed on a "significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit."  Id. (citation omitted); accord G.M. ex rel. R.F. v. New Britain Bd. of Educ., 173 F.3d 77, 81 (2d Cir. 1999).  The prevailing party standard has been interpreted "generously" by the Supreme Court and the Second Circuit.  See Garland, 489 U.S. at 792; G.M., 173 F.3d at 83.

The parties here do not dispute that the Agreement, which was so ordered by an IHO, has the judicial imprimatur necessary for the plaintiff to recover fees under the IDEA.  Instead, the District argues that the Agreement does not grant sufficient relief to render the plaintiff a "prevailing party."

The Parent is a prevailing party here.  In the Agreement, the District consented to (i) maintain M.L.'s placement at and transport M.L. to Bishop for ESY from June 25 through August 3, 2012, (ii) transport M.L. to Sacred Heart for the 2012-2013 school year, (iii) forward M.L.'s records to Monroe-Woodbury, and (iv) reimburse Monroe-Woodbury for any IESP provided.  One of these terms effected a material change in the parties' legal

13

relationship.  Whereas the District's 2012-2013 IEP refused to
provide the Student with ESY services for the summer of 2012,
the Agreement requires the District to provide the Student with
2012 ESY services.  This concession by the District does not
merely maintain the status quo, see Christopher P. by Norma P.
v. Marcus, 915 F.2d 794, 805 (2d Cir. 1990), but reflects a
material shift in the District's legal duties vis-à-vis the
Student.

The District principally contends that the Agreement's
terms simply acknowledge the District's pre-existing legal
obligations under the IDEA and state law, and therefore did not
materially alter the legal relationship between the parties.  In
particular, it argues that it had already agreed to enroll M.L.
in 2012 ESY services as required under the pendency provision of
the IDEA, and that the execution of the Agreement thus had no
bearing on the District's legal duties in that regard.  That is
not entirely so.  Under the 2012-2013 IEP, the District would
have cancelled the Student's ESY entirely.  The ESY session ran
from late June 2012 into early August 2012, and the plaintiff's
Hearing Request and June 19 Proposal requested ESY at Bishop for
that summer session.

The District next contends that any relief the Parent
obtained through the Agreement was at best de minimis and does

14

not entitle the plaintiff to fees.  A court's prevailing party inquiry, however, "does not turn on the magnitude of the relief obtained," and thus "the degree of the plaintiff's success does not affect eligibility for a fee award."  Farrar, 506 U.S. at 114 (citation omitted).  Instead, where a material alteration of the legal relationship between the parties has occurred, the level of a plaintiff's success is a "critical factor" in determining the reasonableness of any fee award.  Id. (citation omitted); see Garland, 489 U.S. at 792-93.  Since the Agreement materially alters the parties' legal relationship, the plaintiff is a prevailing party entitled to attorney's fees.  The degree of the plaintiff's success, and whether that "level of success . . . makes the hours reasonably expended a satisfactory basis for making a fee award," Hensley v. Eckerhart, 461 U.S. 424, 434 (1983), will therefore be considered as part of this Opinion's calculation of reasonable fees below.

    B.  Calculation of Fees

    Having concluded that the plaintiff is a prevailing party, attorneys' fees may be awarded if they are "reasonable" and "based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(B)-(C); see A.R., 407 F.3d at 79.  To determine the amount of a prevailing party's fee

award, a court must calculate the "lodestar" figure, Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551-52 (2010), which represents the "presumptively reasonable fee." Bergerson v. New York State Office of Mental Health, Central New York Psychiatric Center, 652 F.3d 277, 289 (2d Cir. 2011); see Perdue, 559 U.S. at 552. The lodestar figure is calculated "by multiplying a reasonable hourly rate by the number of reasonably expended hours." Bergerson, 652 F.3d at 289; see Blanchard v. Bergeron, 489 U.S. 87, 94 (1989). As a result, "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case," Perdue, 559 U.S. at 551, and "includes most, if not all, of the relevant factors constituting a reasonable attorney's fee." Id. at 553 (citation omitted); see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 190 (2d Cir. 2008) (the inquiry should take into account "all of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate").

     1.  Reasonable Rate

A reasonable hourly rate is "what a reasonable, paying client would be willing to pay, given that such a party wishes

to spend the minimum necessary to litigate the case effectively." Bergerson, 652 F.3d at 289-90 (citation omitted). The reasonable rate is ordinarily determined by "a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel," which may include taking "judicial notice of the rates awarded in prior cases," and consideration of the "evidence proffered by the parties." Farbotko v. Clinton Cnty., 433 F.3d 204, 209 (2d Cir. 2005). The burden is on the fee applicant to show "by satisfactory evidence -- in addition to the attorney's own affidavits -- that the requested hourly rates are the prevailing market rates." Id. (citation omitted).

Here, attorneys A. Cuddy, M. Cuddy, and Jason H. Sterne ("Sterne") propose an hourly rate of $475 for attorney work in this case. This rate is not reasonable. Instead, it far exceeds the prevailing rates for litigation of this type in both the Southern and Northern Districts of New York, particularly given the admittedly uncomplicated nature of this case.

Plaintiff presents four affidavits from attorneys in the Firm and two affidavits from New York City attorneys experienced in the field of special education law[8] as evidence that rates for

_____

[8] The two non-Firm affiants are Gary S. Mayerson ("Mayerson"), partner and founder of Mayerson & Associates; and Jesse Cutler,

17

experienced attorneys in cases such as this typically fall between $400 and $650 per hour.  Courts in this district, however, consistently award fees for attorneys with experience litigating IDEA actions in a far lower range of $300 to $400 or $450 per hour.  See, e.g., M.C. ex rel. E.C. v. Department of Educ. of City of New York, No. 12 Civ. 9281 (CM) (AJP), 2013 WL 2403485 (S.D.N.Y. June 4, 2013) ($375 per hour for experienced New York City attorney); G.B. and L.B. ex rel N.B. v. Tuxedo Union Free Sch. Dist., 894 F.Supp.2d 415, 442-43 (S.D.N.Y. 2012) ($300 and $450 per hour for experienced Goshen, New York counsel); T.K. ex rel. L.K. v. New York City Dept. of Educ., No. 11 Civ. 3964 (JPO), 2012 WL 1107660 (S.D.N.Y. Mar. 30, 2012) ($415 per hour for experienced New York City counsel Mayerson); E.S. v. Katonah-Lewisboro Sch. Dist., 796 F.Supp.2d 421, 430 (S.D.N.Y. 2011) ($350 for experienced Katonah, New York counsel); J.S. ex rel. Z.S. v. Carmel Central School Dist., No. 7:10 Civ. 8021 (VB), 2011 WL 3251801 (S.D.N.Y July 26, 2011) ($375 per hour for experienced New York City counsel Mayerson).

Rates that fall in the higher end of that spectrum typically "are only warranted in unusually difficult and complex cases."  E.S., 796 F.Supp.2d at 430 (citation omitted).  By

supervising attorney for the Law Offices of Regina Skyer & Associates, L.L.P.

contrast, reasonable rates for civil attorneys in small firms often decrease to around $250 or $300 per hour in the Southern District when cases involve straightforward issues.  See, e.g., A.R., 407 F.3d at 82 (finding $300 to $350 per hour a reasonable range for New York City counsel in straightforward, single-plaintiff IDEA action); Francois v. Mazer, No. 09 Civ. 3275 (KBF), 2012 WL 3245439, at * 1 (S.D.N.Y. Aug. 6, 2012) (reducing hourly rates because, among other things, plaintiff's FLSA and NYLL claims were "relatively straightforward"); Wong v. Hunda Glass Corp., No. 09 Civ. 4402 (RLE), 2010 WL 3452417 at *3 (S.D.N.Y. Sept. 1, 2010) (rate of $250 to $350 per hour appropriate for attorneys with ten years of experience litigating FLSA cases); Nwagboli v. Teamwork Transp. Corp., No. 08 Civ. 4562 (JGK) (KNF), 2009 WL 4797777, at *10 (S.D.N.Y. Dec. 7, 2009) (awarding fees at a rate of $250 per hour due to "the straightforwardness of the [civil] action"); cf. E.S., 796 F.Supp.2d at 430 ("an award of $425 per hour to lead counsel was appropriate in an action considerably more difficult and complex than the average civil rights case." (citation omitted)).

Nothing on the record suggests that this case warrants a rate for attorney work that either exceeds or sits in the upper limits of the Southern District's prevailing range.  Instead, this case involved an early settlement, and presented an utterly

straightforward IDEA grievance.  A. Cuddy himself characterized the issues presented as simple enough to resolve in one day. Once admission to Bishop for the 2012-2013 school year was no longer feasible, the parties came to a quick resolution, without the need for any attorney to even participate in the Resolution Session.  The District Proposal presented at the Resolution Session was substantially the same terms adopted by the parties in the final Agreement.  The Parent voluntarily withdrew its request for tuition reimbursement at Sacred Heart.  The other terms of the Agreement reflect actions that the District was otherwise legally obligated to take or involved minor tasks, such as forwarding documents to another school.

As a result, a rate of $250 for attorney work is reasonable in this case.  While plaintiff's attorneys have considerable experience in IDEA administrative proceedings, in these circumstances, even those years of experience do not support awarding the heightened rates requested here.  After all, "the nature of representation and type of work involved in a case are critical ingredients in determining the 'reasonable' hourly rate . . . [and] may justify compensating an attorney at a rate lower than his or her customary rate."  Arbor Hill, 522 F.3d at 184 n.2.

With respect to paralegal rates, courts in the Southern

District typically award fees for paralegal work in IDEA cases at a rate of $90 or $125 per hour.  See, e.g., T.K. ex rel. L.K. v. New York City Dept. of Educ., No. 11 Civ. 3964 (JPO), 2012 WL 1107660, at *6 (S.D.N.Y. Mar. 30, 2012) ($90 and $125 per hour); K.F., 2011 WL 3586142, at *6 ($125 per hour).  It is unclear whether plaintiff requests an hourly rate of $225 or $125 for paralegal work in this case.[9]  A $225 amount, however, would far exceed prevailing rates and would nearly double the rate outlined by the parties in the Retainer, which sets a paralegal hourly rate at $125.  Instead, a $90 hourly rate for paralegal work is reasonable here.

In addition, reasonable rates in this case do not necessarily parallel those typically awarded to attorneys in IDEA actions by courts in the Southern District of New York.  As described above, it is by considering what a reasonable client is willing to pay that "a district court best approximates the workings of today's market for legal services."  Arbor Hill, 522 F.3d at 192; see Bergerson, 652 F.3d at 289.  Thus, while the Second Circuit's "forum rule" generally requires courts to "use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee,"

---

[9] While the Firm's invoice calculations apply paralegal rates of $125 per hour, A. Cuddy's Declaration requests an hourly rate of $225 for paralegal time.

Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citation omitted), "a district court may use an out-of-district hourly rate . . . in calculating the presumptively reasonable fee" if it is clear that a reasonable, paying client expects to pay those rates, and "where circumstances . . . warrant[] it." Arbor Hill, 522 F.3d at 191, 192; see Simmons v. New York City Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009). This includes applying a lower rate to the extent that the reasonable hourly rate for an out-of-district lawyer is less than the billing rate in the district where the court sits. See Arbor Hill, 522 F.3d at 193 n.8.

The Firm's principal office is in Auburn, New York. A. Cuddy, M. Cuddy, and Sterne charge and are awarded rates in the Northern District of New York that are significantly lower than those typically awarded in cases in the Southern District, and substantially lower than the rates the Firm seeks in this action: $250 or $275 per hour for attorney work and between $80 and $100 per hour for paralegal work. See M.C. v. Lake George Cent. School Dist., No. 1:10-CV-1068 (LEK/RFT), 2013 WL 1814491, at *3 (N.D.N.Y. Apr. 29, 2013); C.G. v. Ithaca City School Dist., No. 5:11-CV-1468 (GLS/DEP), 2012 WL 4363738, at *4 (N.D.N.Y. Sept. 24, 2012); S.M. v. Taconic Hills Cent. School Dist., No. 1:09-CV-1238 (LEK/RFT), 2012 WL 3929889, at *2

(N.D.N.Y Sept. 10, 2012); <u>N.C. ex. rel. L.S. v. Oneida City Sch.</u>
<u>Dist.</u>, No. 5:07-CV-1230, 2010 WL 3981823, at *6 (N.D.N.Y. Oct.
8, 2010).  Applying a rate that is in-line with the attorneys'
home market rates is warranted in this case.  As A. Cuddy
recognized, when the plaintiff retained the Firm, the Parent was
"in dire financial straights [sic] due to . . . an extended
period of unemployment."  By hiring experienced counsel located
in Auburn, New York, in the Northern District of New York, the
Parent in these circumstances may well expect to pay those
Northern District, lower rates.[10]  <u>Cf. Simmons</u>, 575 F.3d at 176

---

[10] The Court is not persuaded that the $475 and $125 per hour
attorney and paralegal rates specified in the Retainer are
indicative of a fee the plaintiff reasonably expected to pay.
Given that the Retainer appears crafted to support fee
applications against school districts, the rates quoted in the
Retainer should be analyzed in that light, and are not
dispositive.  <u>See</u> <u>Townsend v. Benjamin Enters., Inc.</u>, 679 F.3d
41, 59 (2d Cir. 2012); <u>cf. Blanchard</u>, 489 U.S. at 93 ("[A]
contingent-fee contract does not impose an automatic ceiling on
an award of attorney's fees, and to hold otherwise would be
inconsistent with the statute and its policy and purpose.").
The high standard imposed by the Second Circuit in <u>Simmons</u> to
determine when exceptions to the forum rule are appropriate was
directed at limiting a court's ability to award out-of-district
fee rates <u>higher</u> than those prevailing in the district in which
the court sits, not lower.  Courts in this Circuit have awarded
lower rates where a party reasonably expected to pay that lower
rate.  <u>See</u> <u>Crescent Publishing Group, Inc. v. Playboy Enters.,</u>
<u>Inc.</u>, 246 F.3d 142, 150-51 (2d Cir. 2001) (permitting district
court to consider parties' billing arrangement in setting hourly
rate below prevailing hourly rate in the district); <u>Sands v.</u>
<u>Runyon</u>, 28 F.3d 1323, 1334 (2d Cir. 1994) (same).  Allowing
lower rates as well as higher rates when warranted furthers the
"sound policy reasons" underlying the exceptions to the forum

("If a high priced, out of town attorney renders services which local attorneys could do as well, and there is no other reason to have them performed by the former," then a court "m[ay] allow only an hourly rate which local attorneys would have charged for the same service." (citation omitted)).  Moreover, here, there is no evidence that the Firm conducted any work in, or felt it necessary to travel to, the Southern District for their work on this case, at any time.  See Arbor Hill, 522 F.3d at 192; cf. Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA, 169 F.3d 755, 759-60 (D.C.Cir. 1999) ("[T]he use of home market rates is preferable when the home market is substantially less costly and the site of the bulk of the legal work because it produces a result that better reflects the purpose of fee shifting statutes," including that "[w]hile limiting lawyers to less than their usual rates would present problems for private parties seeking help, limiting lawyers to what they normally receive in their home market should not.").

In any event, the prevailing rates awarded to the Firm in the Northern District still fall in the low end of the

rule in cases such as this, as it "promotes cost-consciousness, increases the probability that attorneys will receive no more than the relevant market would normally permit, and encourages litigants to litigate with their own pocketbooks in mind, instead of their opponents'."  Simmons, 575 F.3d at 176.

24

prevailing range of reasonable rates awarded to attorneys in the
Southern District for cases of this nature.  Based on the
foregoing, a reasonable hourly rate in this case is $250 for
attorney work and $90 for paralegal work.  These rates reflect
the especially uncomplicated nature of this action, yet remain
"just high enough to attract competent counsel" to these types
of cases.  Simmons, 575 F.3d at 176 (citation omitted); see
Perdue, 559 U.S. at 552 ("[A] reasonable fee is a fee that is
sufficient to induce a capable attorney to undertake the
representation of a meritorious civil rights case." (citation
omitted)).

    2.  Reasonable Hours

Plaintiff's attorneys seek fees reflecting 56.7 total hours
of attorney time and 6.8 hours of paralegal time for work on
both the administrative and federal phases of this case.  The
defendant contends that plaintiff's counsel have billed for time
that is excessive, redundant, and unreasonable, and seek a
reduction in the number of hours claimed.

It is well-established that plaintiffs should receive
compensation only for hours "reasonably expended."  Hensley, 461
U.S. at 433.  A court evaluating the reasonableness of the
number of hours claimed must examine the attorneys' records that
detail the time expended, and must also check those records

25

against the Court's "own familiarity with the case and its experience generally." DiFilippo v. Morizio, 759 F.2d 231, 236 (2d Cir. 1985). "In determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). Whether a case was "particularly complicated" or involved any "significant" legal issues may be considered in determining the reasonable number of hours a case requires. Millea v. Metro-North R. Co., 658 F.3d 154, 167 (2d Cir. 2011); see Perdue, 559 U.S. at 553 (The "novelty and complexity of a case . . . presumably are fully reflected in the number of billable hours recorded by counsel." (citation omitted)). District courts have "ample discretion" in assessing the "amount of work that was necessary to achieve the results in a particular case." Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992); see Hensley, 461 U.S. at 436.

A significant reduction in the hours requested by plaintiff's counsel is warranted in this case. The Firm has not described the work performed for the plaintiff in any detail, but has submitted its contemporaneous time records for this matter. Only a fraction of the time expended by attorneys at the Firm is reasonable in light of the work product generated to

26

resolve the matter and the narrow and speedy results achieved
for the plaintiff.  The reasonable number of hours expended for
each phase of proceedings is described below.

a.  Administrative Phase

During the administrative phase of proceedings, plaintiff's
attorneys appear to have submitted about five pages of written
materials -- a four-page Hearing Request, a one-page June 19
Proposal, and an initial settlement proposal that apparently
tracked the June 19 Proposal.  Plaintiff's attorneys also made
only minor changes to the District Proposal; did not participate
in the Resolution Session; and were faced with an admittedly
"simple" settlement to negotiate and execute, for which the
Resolution Session lasted only thirty minutes.

For the administrative phase, the billing records indicate
the following.  It appears that the first substantive discussion
with the Parent occurred on May 23, when A. Cuddy and the Parent
had a telephone conversation that lasted one hour and ten
minutes.  A second short telephone call occurred on May 28.  A.
Cuddy asserts he spent over four hours on June 13 preparing the
four-page Hearing Request; it contains just over one page
detailing the facts of the case, and two pages outlining broadly
why the District had failed to provide a FAPE and listing
plaintiff's requested relief.  The Hearing Request was submitted

27

on June 15.

On June 19, the Parent called the Firm's paralegal, and in the course of a twenty-minute discussion explained that a placement at Bishop was not possible for the 2012-2013 school year.  Apparently prompted by this revelation, the paralegal discussed a proposed settlement with A. Cuddy and promptly e-mailed the plaintiff's proposal to the District that day.  The District acknowledged its obligation under the "stay put" provision of the IDEA to provide ESY for the Student during the pendency of the administrative proceedings at or around this time.[11]

The District seems to have responded promptly to the Firm's June 19 Proposal, and the outlines of a settlement were largely reached just three days later -- by about June 22 or 23 -- after an exchange of e-mails and telephone calls between the District and M. Cuddy.  The outstanding issues were tuition reimbursement for Sacred Heart, the payment of transportation to Sacred Heart, and plaintiff's attorneys' fees.  The Firms' paralegal participated in the Resolution Session on July 12, at which time

---

[11] The plaintiff affirms that the District acknowledged its pendency obligation to place M.L. in 2012 ESY at Bishop on June 19.  The District asserts that they acknowledged their obligation to provide 2012 ESY for the M.L. during the pendency of the administrative proceedings upon receiving notice of the Hearing Request, but does not provide a specific date.

the District presented its District Proposal for settling the dispute in writing.  Having confirmed it was already providing transportation for other students to Sacred Heart, the District offered to do so for the Student as well.  The Agreement, which tracked the District Proposal, was executed on July 18.  In the District Proposal and Agreement, the parties agree to disagree about payment of plaintiff's attorneys' fees.

The Firm seeks over $13,000 for this work, representing over twenty-six hours of attorney time and about six hours of paralegal time.  For the work done here, however, at the very most ten hours of attorney time are reasonable.  In addition, it is clear that the Firm gave paralegals, particularly Aughtmon, a great deal of responsibility in this case.  In a straightforward settlement case such as this, that efficient delegation of responsibility to capable paralegals is to be encouraged and commended.  The paralegals are thus entitled to receive the full hours claimed for their work on the administrative phase of this case.

Plaintiff principally argues that the requested fees should not be reduced because counsel successfully obtained the relief the plaintiff sought in bringing the administrative action.  One of the most critical factors courts take into account in awarding fees is the "degree of success obtained" by counsel.

Farrar, 506 U.S. at 114 (1992); Hensley, 461 U.S. at 463 (courts consider "whether the expenditure of counsel's time was reasonable in relation to the success achieved").  The level of success refers not only to the success of specific claims, but also to the "quantity and quality of relief obtained, as compared to what the plaintiff sought to achieve" in bringing the action.  Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 152 (2d Cir. 2008) (citation omitted).

While plaintiff's attorneys certainly achieved a favorable result for the plaintiff with respect to 2012 ESY services, the District readily agreed to provide those services, the overall results were not substantial, and the plaintiff has not demonstrated that any other significant relief on plaintiff's IDEA claims was obtained through the Firm's efforts.  It may be true that the "major purpose" of bringing the Hearing Request was to secure ESY for the summer 2012.  But the Hearing Request also sought: tuition reimbursement, proper evaluations conducted for M.L., and determinations as to whether M.L. was denied a FAPE or the IEP was procedurally inadequate.  No determination of these central issues was ever reached.  Several of the plaintiff's initial claims were abandoned for the sake of settlement, including the Parent's request for tuition reimbursement for the 2012-2013 school year and a determination

that the District's 2012-2013 FAPE was inadequate.  Even if some of the abandoned claims were interrelated, non-frivolous, or made in good faith -- which the Court does not decide -- the fees requested are still excessive in light of the degree of success achieved and the time required to obtain the award achieved in this case.  See Hensley, 461 U.S. at 436; Millea, 658 F.3d at 154.[12]

In addition, given the relative simplicity of the matter and the experience of the Firm's attorneys, many of the entries included on the Firm's billing invoices for the administrative phase are excessive and duplicative.  For example, lead attorneys A. Cuddy and M. Cuddy list several entries for time spent discussing and reviewing each other's work.  Although it is hardly remarkable for more than one lawyer to represent a client and assist in the resolution of a matter, courts may assess "what is appropriate for the scope and complexity of the particular litigation," keeping in mind "the degree of effort reasonably needed to prevail in the litigation."  New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146

---

[12]  It also appears that the one substantive issue that remained in dispute between the parties after about June 23 -- transportation to Sacred Heart -- could have been resolved even earlier if the District had not waited until the Resolution Session to confirm that it was transporting other students to Sacred Heart and would also provide that transportation for M.L.

31

(2d Cir. 1983); see Luciano v. Olsten Corp., 109 F.3d 111, 117 (2d Cir. 1997).  Fees for the amount of intersecting work of experienced attorneys and paralegals on this straightforward administrative settlement that is claimed here are not warranted.

Some entries in the Firm's billing records for the administrative phase are also too vague to determine whether or not the amount of time spent on particular tasks was reasonable. Plaintiffs have the burden of providing evidence to support the number of hours worked, and although counsel "is not required to record in great detail how each minute of his time was expended," counsel should "identify the general subject matter of his time expenditures."  Hensley, 461 U.S. at 437 n.12.

Several entries in the Firm's billing records also seek fees for attorney and paralegal time spent on work that is described as related to intimidation, unreasonable demands, or inappropriate conduct by opposing counsel or their client. These issues were not discussed at all in the plaintiff's submissions in support of the instant fee application, and given the speedy timeframe in which the matter was resolved, these concerns cannot have been more than tangential.  Plaintiff provides no indication that these hours are compensable as reasonable time expended.

Accordingly, based on the uncomplicated nature of the
issues presented, the results obtained, and the excessive
billing described above, fees for the administrative phase of
the case will be calculated reflecting ten hours of attorney
time and six hours of paralegal time.  At a rate of $250 per
hour for attorney work and $90 per hour for paralegal work, the
Firm is awarded $3,040.00 in fees for the administrative phase
of proceedings.

> b.  Federal Phase

With respect to the instant fee motion, the Firm submitted
a thirteen-page memorandum of law in support of its application
for fees, a four-page reply, and several declarations.  Sterne
was the lead attorney charged with handling the federal phase of
proceedings, with A. Cuddy assisting.  The Firm's billing
records for the litigation of this fee application in federal
court indicate the following.  A. Cuddy and Sterne began
discussing the instant fee motion on July 27, following the
execution of the Agreement.  Sterne spent just over three hours
on August 10, 2012 drafting the summons and complaint.  After
the case was reassigned to this Court in December, Sterne
participated in the initial pre-trial conference by telephone on
January 18, 2013 which lasted roughly twenty minutes.  Over two
days in mid-February -- February 16 and 19 -- Sterne spent

33

roughly one-half hour litigating a dispute between the parties as to whether the District had failed timely to file a motion to dismiss.

Between February 20 and 26, Sterne researched and prepared the plaintiff's thirteen-page memorandum of law in support of the fee application.  The body of this document included copies of documents and general descriptions of the law pertaining to an award of attorneys' fees.  While useful, these passages did not require an investment of attorney time in this action.  It appears Sterne also drafted A. Cuddy's declaration during that time, while A. Cuddy solicited and collected supporting fee affidavits from outside counsel Mayerson and Cutler.[13]  Finally, Sterne spent over five hours on March 22 preparing the plaintiff's four-page reply brief.

For this work, the Firm seeks over $14,000 in fees, reflecting over thirty hours of attorney work and one hour of paralegal work.  This is not at all reasonable.  Neither the fee application nor the reply involved complex or unusual legal issues.  Moreover, a significant number of A. Cuddy's and Sterne's billing entries for the federal phase appear to involve time spent discussing and reviewing one another's work, which is

---

[13] The records indicate that A. Cuddy also spent time seeking fee declarations from three additional attorneys whose affidavits were not submitted to the Court.

excessive in light of the straightforward submissions ultimately filed. See Luciano, 109 F.3d at 117 (finding it was "within the purview of the [district] court's discretion to determine whether or not the actual time expended by an additional attorney was reasonable"). Many of the attorneys' federal phase billing entries are also too vague to determine whether or not the amount of time spent on particular tasks was reasonable. Hensley, 461 U.S. at 437 n.12.

Given the uncomplicated nature of this fee motion and the underlying administrative proceedings, and the excessive billing described above, no additional amount can reasonably be awarded to the Firm for the federal phase of proceedings. The $3,040 awarded for attorney and paralegal work on the administrative phase of this case is already generous -- fees anywhere within a $1,000 to $3,000 range would have been reasonable for the Firm's work on the utterly straightforward administrative settlement at issue here. The Court has already conferred fees at the uppermost reaches of that reasonable range here, and no additional fee is warranted given the circumstances of this case. Cf. Barfield, 537 F.3d at 152 (It is "the court's central responsibility to make the assessment of what is a reasonable fee under the circumstances of the case." (citation omitted)); Farrar, 506 U.S. at 104 ("In light of the relationship between

the extent of petitioners' success on the merits and the award's amount" a reasonable fee may be "no fee at all." (citation omitted)).

Awarding any additional fees for the Firm's litigation in federal court would inappropriately endow the Firm with fees and costs that match its initial, excessive fee demand from the District.  Litigation of attorneys' fees in federal court should not be used as a vehicle to shift additional fees onto the District in order to secure the unreasonable fee total that the Firm initially demanded.

In the June 19 Proposal, the Firm sought "under $5K" in fees and costs for its work representing the plaintiff.  At that point, the Firm had produced the four-page Hearing Request and a one-page communication with the District.[14]  That the Firm initially sought anywhere near $5,000 for that work was wholly unreasonable.  It would have been entitled to only a fraction of that amount.  Conferring an additional amount on top of the Court's already-liberal award of $3,040 for time the Firm spent

---

[14] The only substantive work the Firm completed on the plaintiff's behalf in the time between the June 19 Proposal and the execution of the Agreement was a paralegal's participation in the thirty-minute Resolution Session, and carrying out a conciliatory negotiation.  The Firm now asserts that its work through the administrative phase warrants an award of over $13,000 in attorneys' fees, or two and a half times its initial demand.

working for the plaintiff's benefit is not warranted as part of a reasonable fee award in this case.  Cf. Hensley, 461 U.S. at 436 (finding that a typical lodestar calculation "may be an excessive amount" where "a plaintiff has achieved only partial or limited success").  An award of supplementary fees for the federal litigation of the fee dispute between the parties here would neither further the purpose of fee-shifting statutes, see Quaratino, 166 F.3d at 426 (to "attract effective legal representation" in civil rights litigation even where monetary recovery may be small), nor encourage the efficient use of judicial resources.

  3.  Costs

   Finally, plaintiff's counsel have documented costs totaling $354.00 for both the administrative and federal phases of proceedings, consisting of a $350.00 filing fee for the federal complaint, and $4.00 for faxes.  The costs requested are reasonable, and the Firm is entitled to their full amount.

CONCLUSION

Plaintiff's March 1, 2013 motion for attorneys' fees is granted in part.  Plaintiff's counsel is awarded $3,394.00, reflecting $3,040.00 in fees and $354.00 in costs.  The Clerk of Court shall enter judgment for the plaintiff and close this case.

SO ORDERED:

Dated:    New York, New York
          September 5, 2013

_____
          DENISE COTE
   United States District Judge

38